**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| BRANDEN OTOUPAL, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 3:16-CR-0010-TCB-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 3:18-CV-0100-TCB-RGV |

### FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Branden Otoupal's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 47], his supporting memorandum, [Doc. 51], and the government's response, [Doc. 53].  Following a March 15, 2019, evidentiary hearing, [Doc. 64], and having considered the motion, the evidence presented, and the parties' post-hearing briefs, [Docs. 69; 72], it is **RECOMMENDED** that Otoupal's § 2255 motion be **DENIED**.

### I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a two-count indictment against Otoupal charging him in Count One with sexual exploitation of a minor in connection with the production of child pornography, in violation of 18

U.S.C. § 2251(a) and (e), and in Count Two with possessing at least one depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). [Doc. 1]. Represented by Victoria Calvert ("Calvert") of the Federal Defender Program, Inc., Otoupal entered an unconditional, non-negotiated guilty plea to Count One. [Docs. 35; 57]. At the plea hearing, Otoupal was placed under oath, confirmed that he had signed the guilty plea, and acknowledged that he was required to answer the Court's questions truthfully subject to the penalty of perjury. [Doc. 57 at 2-4]. The Court explained the rights Otoupal was giving up by pleading guilty, including his rights to plead not guilty and to proceed to trial, to the assistance of an attorney at trial, to cross-examine government witnesses, to testify or not to testify, to present evidence, and to subpoena witnesses and compel their attendance at trial. [Id. at 4]. Otoupal confirmed that he understood those rights and that he was waiving them by pleading guilty. [Id. at 4-5].

Otoupal also understood that he was pleading guilty to the production of child pornography and that he faced a mandatory minimum sentence of fifteen years of imprisonment and a possible maximum sentence of thirty years. [Id. at 5-6]. The Court then explained that it would consider the United States Sentencing Guidelines in determining a reasonable sentence but could impose a sentence above

2

or below the guideline range and that Otoupal could not withdraw his guilty plea if the Court sentenced him above that range, and Otoupal affirmed that he understood. [Id. at 6-7].  Otoupal acknowledged that he was entering the plea voluntarily, that no one had threatened or forced him to plead guilty, and that no one had promised him anything to induce him to enter a guilty plea.  [Id. at 7].

Next, the government stated that the evidence at trial would show that, in late 2014, the Russian government seized an internet board containing child pornography and that the information seized included an Internet Protocol ("IP") address that belonged to Charter Communications. [Id. at 8].  The case was referred to Homeland Security Investigation ("HSI"), who issued a subpoena to Charter Communications.  [Id.].  The results showed that the IP address was assigned to Otoupal at a residence in Carrollton, Georgia.  [Id.].  Based on this information, HIS agents obtained a search warrant for the residence, and, after interviewing all of the persons at that residence, Otoupal became the target of the investigation.  [Id. at 8-9].  Otoupal "cautiously admitted that he might have downloaded some child pornography" and stated that "the agents might find some videos of a fifteen-year-old girl on his phone."  [Id. at 9].  In executing the search warrant, the agents took Otoupal's iPhone and found more than 400 images of child pornography and messenger chats with a sixteen-year-old girl in which Otoupal coerced the minor

3

to send him sexually explicit videos.  [Id. at 9-10].  Otoupal affirmed that, other than the number of images allegedly found on his iPhone, he agreed with the facts stated by the government and admitted that he was guilty of the crime charged in Count One, and he wanted the Court to know that he was under the influence of alcohol at the time he committed the offense.  [Id. at 11].  The Court accepted Otoupal's plea.  [Id. at 11-12].

At sentencing, the Court determined that Otoupal's guideline range was 210 to 262 months of imprisonment.  [Doc. 58 at 2].  The Court granted the government's motion to dismiss Count Two, [Doc. 44], and sentenced Otoupal to 192 months of imprisonment, [Doc. 45 at 2; Doc. 58 at 14-15].  Otoupal did not file a direct appeal.

Otoupal timely filed this pro se § 2255 motion.  [Doc. 47].  Otoupal argues, among other things, that counsel was ineffective for failing (1) to explain "the pros and cons of pleading versus going to trial" or "the meaning of 'right to face your accusers'" and (2) to adequately investigate and challenge the search warrant for its reliance on a lead from Russian law enforcement officers.[1]  [Doc. 51 at 5-6, 9,

---

[1] To the extent that Otoupal intended to raise any additional claims, they fail because Otoupal did not adequately develop them with argument and/or supporting

18-24].  The government responds that Otoupal has failed to show that he received

ineffective assistance of counsel.  [Doc. 53 at 6-12].  The undersigned found that

an evidentiary hearing was necessary to resolve ground one only, [Doc. 60],

appointed counsel to represent Otoupal, [Doc. 61], and held the evidentiary hearing

on March 15, 2019, [Doc. 64].

## II.  DISCUSSION

### A.    Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground

that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that

the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a

prisoner must clear a significantly higher hurdle than would exist on direct appeal."

United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

The standard for evaluating ineffective assistance of counsel claims is set

forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The analysis is two-

---

facts.  See Adams v. United States, Nos. 1:10-CR-0006-1-CAP and 1:17-CV-0047-
CAP, 2018 WL 6521977, at *5-6 (N.D. Ga. Dec. 12, 2018) (finding vague and
conclusory allegations insufficient).

pronged.  However, a court need not address both prongs "if the defendant makes an insufficient showing on one."  Id. at 697.  A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).  Counsel is required to provide defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information.  Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam).

Otoupal has the burden of affirmatively proving prejudice.  Gilreath v . Head, 234

F.3d 547, 551 (11th Cir. 2000).   Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at
> [a guilty plea] hearing, as well as any findings made by the judge
> accepting the plea, constitute a formidable barrier in any subsequent
> collateral proceedings.  Solemn declarations in open court carry a
> strong presumption of verity.   The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to summary
> dismissal, as are contentions that in the face of the record are wholly
> incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

## B.    Counsel's Advice to Plead Guilty

Otoupal alleges that his attorney was ineffective for failing "to investigate

numerous facets of the case," and "did not possess the requisite knowledge-and-

fact basis to make informed decisions regarding advice to [him]," [Doc. 51 at 5],

and failed to explain "the pros and cons of pleading versus going to trial" or "the

meaning of 'right to face your accusers'" and that, had counsel provided him

adequate advice, he would have "proceeded to trial."   [Id. at 9].   The crux of

Otoupal's argument is that counsel should have investigated and advised him

regarding the Russian government's capture of the IP address.  [Id. at 2-3, 9; Doc.

69 at 8-9].  Furthermore, in his post-hearing brief, Otoupal contends that he was

unaware that he could have offered a plea to the possession count alone, that he did

not understand that his attorney would be allowed to cross-examine the victim at trial, and that he would not have entered a non-negotiated plea to the production count had counsel fully investigated this case and properly advised him.  [Doc. 69 at 9, 11].

The government responds that Calvert adequately represented Otoupal and that Otoupal "never testified that he would have gone to trial but for counsel's advice." [Doc. 72 at 5-6].  The government argues that Otoupal has failed to satisfy either prong of Strickland and that his focus on the Russian portion of the investigation is a "distraction."  [Id. at 7-8].

1.      **Summary of Relevant Evidentiary Hearing Testimony**

Calvert testified that she gave Otoupal a copy of the discovery in his case, that she did nothing to "verify the veracity or validity of the Russian reports," that she did not discuss with Otoupal the personal data HSI received as a result of the summons that was issued based on the IP address provided to HSI by Russia or the possibility of attempting to suppress that data, and that she did not research whether the summons was properly issued.  [Doc. 64 at 11-13].  Instead, Calvert focused on attempting to suppress the evidence obtained during the search, including Otoupal's statements and the evidence from his phone.  [Id. at 12, 14].  Calvert acknowledged that, had she won a motion to suppress the summons, there would

have been no search warrant and, thus, no evidence "besides the word of the victim," and the outcome would likely have been different. [Id. at 24]. However, on cross-examination, Calvert stated that, based on her experience and knowledge of the law, "no court has ever found that a defendant has a reasonable expectation of privacy in an IP address," and she decided to move to suppress Otoupal's statements after consultation with Otoupal. [Id. at 27].

Calvert told Otoupal that she had attempted to negotiate a plea that did not require him to plead to the production of child pornography count, but the government would not agree to that. [Id. at 16]. Calvert advised Otoupal that the likelihood of success at trial was "pretty poor" and that her "extensive plea negotiations were unsuccessful." [Id. at 17]. Calvert also explained to Otoupal "the options of pleading straight up versus pleading with the plea agreement." [Id. at 18, 34]. Calvert did not think that entering a straight-up plea to the possession count only was a viable option because, in light of the government's position regarding the production count, her "concern would have been that they would have used that plea to the possession count against him later on." [Id. at 18-19]. Calvert also did not advise Otoupal that he could enter a conditional plea preserving his right to appeal the denial of his suppression motion because she did not believe that an appeal would be successful. [Id. at 20].

Calvert advised Otoupal "that his best shot was just to plead guilty rather than bringing the victim, who . . . was very sympathetic, to trial." [Id. at 31]. Calvert also explained to Otoupal "that the intoxication was not going to be a valid defense." [Id. at 33]. Calvert did not pressure Otoupal to plead guilty, but presented all of his options and gave her advice based on her opinion and experiences. [Id. at 35]. During her discussions with Otoupal, Calvert covered the pros and cons of pleading guilty versus going to trial and what Otoupal's rights are during a trial. [Id. at 40-41]. Calvert made clear to Otoupal that "ultimately it was his decision," and he appeared to understand and did not express any dissatisfaction with her representation. [Id. at 35-37].

Otoupal testified that he never discussed with Calvert his rights in connection with the information provided to HSI by the Russian government and that they never challenged that information, which is Otoupal's "main concern." [Id. at 48-49, 51-52]. Otoupal further testified that Calvert did not discuss his options with him and that he believed his only option was to plead guilty. [Id. at 43]. Otoupal understood that plea negotiations can only occur if both parties were wiling to negotiate and that the government was not willing to negotiate a plea in his case. [Id. at 54-56]. Otoupal acknowledged that Calvert advised him about her meeting

10

with the victim, her assessment of how the victim's testimony would likely affect the Court, and what sentence he might receive after a trial.  [Id. at 57].

## 2.    Analysis

Calvert testified that she advised Otoupal of his options, including the pros and cons of each option and that, based on her experience and understanding of the law, his best option was to enter a non-negotiated plea to the production count, but that the decision was ultimately his to make; and Calvert further testified that Otoupal appeared to understand and did not express any dissatisfaction with her representation.  [Doc. 64 at 17-18, 31, 34-37, 40-41].  To the extent that Otoupal's testimony conflicts with Calvert's testimony, the Court credits the testimony of Calvert, the more credible witness.

Otoupal "had no reasonable expectation of privacy in an IP address assigned by the Internet Service Provider or any of the other information acquired from" Charter Communications.  United States v. Jenkins, No. 1:18-cr-00181, 2019 WL 1568154, at *5 (N.D. Ga. Apr. 11, 2019).  Therefore, HSI "needed no warrant to obtain the information," and the search warrant later issued based on that information was valid.  Id.  Accordingly, Calvert's failure to investigate and raise this meritless issue in a motion to suppress the warrant to search Otoupal's residence was reasonable.

As to Calvert's failure to advise Otoupal that he could enter a straight-up plea to the possession count only, Calvert testified that this was not a viable option because the government refused to consider a plea without the production count, and she was concerned that the government would have used a straight-up plea to the possession count against Otoupal in a trial on the production count. [Doc. 64 at 16, 18-19]. Otoupal knew that the government was not willing to accept a plea on the possession count alone. [Id. at 54-56]. Thus, Calvert's failure to advise Otoupal to enter a straight-up plea to the possession count, which was not a viable option, was reasonable.

Otoupal's contention that he did not know that his attorney could cross-examine the victim at trial is belied by the record, which reveals that the Court advised him of this right during the plea colloquy, and Otoupal stated that he understood. [Doc. 57 at 4]. Otoupal has not met his "heavy burden" to show that the statements he made during his plea colloquy were false. See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (holding that self-serving allegations in § 2255 motion were insufficient to rebut the presumption that statements made during plea colloquy were true and correct). Moreover, even if Calvert had failed to explain Otoupal's right to face his accuser, this alleged failure

12

"was cured by the district court." United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) (per curiam).

Otoupal has not presented any "credible evidence, other than his own self serving, after-the-fact contentions, that he was not competent to enter a knowing and voluntary guilty plea, [or] that his attorney was in the slightest degree remiss in [her] advice and representation concerning the plea." Wilcox v. United States, No. 8:10-CV-1917-T-27EAJ, 2011 WL 5975683, at *10 (M.D. Fla. Nov. 29, 2011). Moreover, Otoupal has not shown prejudice because he has not identified an "affirmative defense [that] likely would have succeeded at trial" and because he did not testify that, but for counsel's advice, "he would have pleaded not guilty and insisted on going to trial." Hill, 474 U.S. at 59-60. Therefore, Otoupal is not entitled to relief on ground one.

## C.      **Pre-Plea Issues Waived by Valid Guilty Plea**

Otoupal also argues that counsel was ineffective for failing to adequately investigate and challenge the search warrant for its reliance on a lead from Russian law enforcement officers. [Doc. 51 at 5-6, 18-24]. A criminal defendant who has entered a guilty plea "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). A voluntary, unconditional guilty

plea waives all nonjurisdictional challenges to the constitutionality of the conviction, including ineffective assistance of counsel claims that involve pre-plea issues such as challenges to the legality of a search.  Edwards v. United States, No 17-10322-D, 2018 WL 3586866, at *1 (11th Cir. June 4, 2018); United States v. Aguilar, 196 F. App'x 837, 838 (11th Cir. 2006) (per curiam); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).  Accordingly, by entering a guilty plea, Otoupal waived this claim.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate

to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Otoupal's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV.  CONCLUSION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that Otoupal's § 2255 motion, [Doc. 47], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 20th day of August, 2019.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE